UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Anson Watkins,

       Plaintiff,

                            Case No.  13-13678
v.                               Hon. Denise Page Hood

County of Genesee, *et al.*

       Defendants.

_____/

**ORDER REGARDING DEFENDANTS' MOTION FOR JMOL [#71],
PLAINTIFF'S MOTION FOR ORDER AWARDING ATTORNEY FEES,
COSTS AND INTEREST [#73] and DEFENDANTS' MOTION TO REVIEW
THE CLERK'S TAXED COSTS PURSUANT TO RULE 54(d)(1) [#76]**

Before the Court are: (1) Defendants' Motion for Judgment as a Matter of Law
(Doc. No. 71); (2) Plaintiff's Motion for Order Awarding Attorney Fees, Costs and
Interest (Doc. No. 73); and (3) Defendants' Motion to Review the Clerk's Taxed
Costs Pursuant to Rule 54(d)(1) (Doc. No. 76).  The motions have been fully briefed,
except that Plaintiff did not file a reply brief with respect to his Motion for Order
Awarding Attorney Fees, Costs and Interest.  The Court, having concluded that the
decision process would not be significantly aided by oral argument, orders that the
motions be resolved on the motion and briefs submitted by the parties. E.D. Mich.
L.R. 7.1(f)(2).

1

## I.    BACKGROUND

This case stems from events that occurred on or about August 28, 2011, when Plaintiff was an inmate at the Genesee County Jail ("GCJ").  Plaintiff was approached in his cell by Defendants Broecker, Winston, Mangrum, and Illig.  Defendant Winston used knee strikes against Plaintiff, Defendant Winston put Plaintiff in a headlock and brought him to the ground, and Defendant Broecker tased Plaintiff in the buttocks.  All of the above-named individual Defendants then kicked, punched, and hit Plaintiff until he lost consciousness.  Defendants placed Plaintiff in a safety cell for 24 hours.

On or about August 31, 2011, Plaintiff was released from the GCJ, and his brother took him to McLaren Hosptial to treat his injuries.  At McLaren Hospital, Plaintiff reported that he had been kicked and punched in the head and face by the above-named individual Defendants, and he complained of head and facial pain, blurred vision, bilateral arm and back pain, and redness around the left eye.  Since the incident, Plaintiff claims he suffers or has suffered from head trauma, concussion, dizzy spells, blackouts, migraines, memory loss, stress, chronic body pain, paranoia, constant nervousness, and numbness in his neck and down his arms.  Plaintiff sought compensatory and punitive damages for the personal injuries he claims he sustained at the GCJ on August 28, 2011.

2

A jury trial was held between January 26, 2016, and February 10, 2016. The jury was asked to determine if each of the individual officers: (a) used excessive force with respect to his or her interaction with Plaintiff, and (b) was deliberately indifferent to any medical needs of Plaintiff. The jury also was asked to determine whether Genesee County failed to reasonably supervise its officers or failed to provide adequate training regarding the appropriate and lawful use of force. The jury returned, and judgment was entered consistent with, a verdict of: (a) no cause of action against Broecker, Mangrum, and Illig on any claim; (b) $1.00 for compensatory damages and $1.00 for punitive damages against Winston on the use of excessive force claim but no liability on the deliberate indifference to medical needs claim; and (c) $10,000.00 against Genesee County for failure to reasonably supervise its officers and/or failure to provide adequate training regarding the appropriate and lawful use of force.

## II.   ANALYSIS REGARDING DEFENDANTS' MOTION FOR JMOL

## A.   Legal Standard

Judgment as a matter of law should be granted when "viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." *Jordan v. City of Cleveland*, 464 F.3d 584, 594 (6th Cir. 2006)

3

(citing *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004)). *See also  Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 598 (6th Cir. 2001); *Williams v. Nashville Network*, 132 F.3d 1123, 1130-31 (6th Cir. 1997); *Barnes v. City of Cincinnati*, 401 F.3d 729, 736 (6th Cir. 2005).  A motion for judgment as a matter of law should not be granted unless reasonable minds could come to only one conclusion, a conclusion that favors the moving party. *Radvansky v. City of Olmstead Falls*, 496 F3d 609, 614 (6th Cir. 2007).

## B.    Analysis

Defendants challenge only the jury's finding that Genesee County is liable on the failure to supervise/failure to train claim.

It is well-established that a municipality cannot be held vicariously liable for the alleged constitutional torts of its employees, such that *respondeat superior* is not a viable theory of recovery. *Monell v. Dep't. of Social Services*, 436 U.S. 658, 691 (1978). Rather, liability will attach only where the plaintiff establishes that the municipality engaged in a "policy or custom" that was the "moving force" behind the alleged deprivation of the plaintiff's rights. *Id.*; *Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996). In other words, "governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122

4

(1988).  "[T]o satisfy the Monell requirements a plaintiff must 'identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993). Additionally, a single incident of unconstitutional activity does not establish an official policy or practice of a municipality sufficient to render the municipality liable for damages under section 1983. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

Defendants assert that Plaintiff cannot make the requisite showing under *Monell* with respect to the alleged "unconstitutional" policy of failing to train/supervise. To establish that a municipality failed to properly train or supervise an employee, plaintiff must show that the alleged failure evidences a "deliberate indifference" to the rights of its inhabitants. *City of Canton v. Harris*, 489 U.S. at 378, 388-389 (1989); *Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994). "Deliberate indifference" means evidence showing an obvious indifference, not a "collection of sloppy, or even reckless oversights." *Doe, supra* at 508. Whether the training was the best and most comprehensive available or whether the injury could have been prevented by more or better training has no bearing on a plaintiff's failure to train claim. *Lewis v. City of Irvine, Kentucky*, 899 F.2d 41, 45 (6th Cir. 1990). Instead, "the need for more or different training [must be] so obvious, and the inadequacy so likely

5

to result in the violation of constitutional rights, that the policymakers of the [county] can reasonably be said to have been deliberately indifferent to the need." *Canton,* 489 U.S. at 390. *See also Tennessee v. Garner*, 471 U.S. 1 (1985). Liability for failing to train "attaches only if a constitutional violation is part of a pattern of misconduct, or where there is essentially a complete failure to train the police force, or training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to occur." *Ontha v. Rutherford County, Tennessee*, 222 F. App'x. 498, 504 (6th Cir. 2007) (quoting in part *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)).

Pursuant to the agreement of the parties, the jury was instructed that Genesee County could be "liable for [a] deprivation only if Plaintiff provides by a preponderance of the evidence that the deprivation resulted from Genesee County's official policy." (Doc. No. 65, PgID 858). The Court also instructed the jury that it could find against Genesee County only if the jury found that: (1) Genesee County's training program was inadequate to train its officers and employees; (2) the need for more training or different training was so obvious and the inadequacy so likely to result in a violation of constitutional rights, that the policymakers of Genesee County were deliberately indifferent to the need for the training; and (3) that failure was the cause of Plaintiff's injury. (Doc. No. 65, PgID 860)

6

Defendants contend there is no evidence to support a claim that Genesee County failed to adequately train its deputies on the use of force prior to the alleged incidents. Defendants indicate that the testimony established that, when deputies are hired, they are sent to a corrections academy, where they are trained in the use of force and tactics for defensive and control purposes in situations of non-compliance.

Undersheriff Swanson testified about the training of officers on force continuum and excessive force protocol, stating that all new officers are taught those things in the "Corrections Academy" when they commence their position with Genesee County (if they did not have prior police academy training). Undersheriff Swanson testified that Genesee County provides periodic and daily on-the-job training. The evidence at trial revealed that Defendant Illig had 640 hours of police training when he became a police officer in 2008, but no evidence of additional training of any form prior to August 28, 2011. Defendant Mangrum attended a police academy in 2007 and had a refresher course on "use of force training" in 2008. Defendant Winston testified that he last received hands-on defensive tactics training in 2008. Defendant Broecker was promoted to Sergeant in 2009, and she testified that she had some training in 2000 and 2009.

Defendants assert that Plaintiff cannot establish a policy of failing to supervise leading to excessive force because there are multiple supervisors working every shift

7

at the jail that provide constant supervision. Defendants rely exclusively on the testimony of Undersheriff Swanson as it relates to its supervision policy(ies). Undersheriff Swanson testified that there are daily staff meetings with the Captains, the Undersheriff, and the Sheriff, at which every report is "looked over and reviewed and authored and signed by a Sergeant, Lieutenant, Captain and ultimately [Undersheriff Swanson] if it involves force." (Doc. No. 75, PgID 983) Undersheriff Swanson testified that there also are four mandatory command staff meetings to review "all these issues." *Id.* According to Undersheriff Swanson, this is a better way to know how employees are doing and can improve. *Id.* at PgID 984. The Court notes that both Undersheriff Swanson and Defendant Broecker testified that they do not give performance or employee evaluations, and Defendants acknowledge that Genesee County stopped conducting performance evaluations of its GCJ officers in 2010, at the latest.

There was no documentary evidence to support any of Undersheriff Swanson's statements, which meant that the jury had to accept as true everything Undersheriff Swanson said in order for them to find in favor of Genesee County. In a case of this nature, the Court finds that it was possible and reasonable for a jury to find a witness was not credible. The Court finds that to be especially true with respect to the existence of the need for performance reviews and training logs. Those are

8

documents that reasonable jurors (and reasonable persons) could believe to be standard or routine in <u>any</u> workplace, and that reasonably would be expected for a paramilitary organization such as the GCJ.

The absence of any documentation of reviews or training, taken together with the lack of a written policy for training or supervision, support a finding that a jury reasonably could determine that the training program described by Undersheriff Swanson was not adequate to train Genesee County's (GCJ's) officers and employees. Specifically, the absence of "use of force" training by any of the individual defendants for at least the three-year period preceding the events giving rise to this lawsuit constitutes evidence from which a reasonable jury could conclude that Genesee County failed to supervise and/or failed to train its employees. For the same reasons, the Court concludes that a reasonable jury could conclude that: (a) the need for more or different training was so obvious; (b) the inadequacy of the training was so likely to result in a violation of constitutional rights, (c) the policymakers of Genesee County were deliberately indifferent to the need for training, and (d) those failures were the cause of Plaintiff's injury. *Canton*, 489 U.S. at 390.

The Court DENIES Defendants' Motion for JMOL.

## III.   AWARDING ATTORNEY FEES PURSUANT TO 42 U.S.C. § 1988 and COSTS PURSUANT TO RULE 54(d)

Plaintiff has requested that the Court assess attorney fees and costs pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d). In fact, Plaintiff previously filed a bill of costs with the Clerk of the Court pursuant to Rule 54(d) [Dkt. No. 72], and the Clerk of the Court taxed Defendants in the amount of $3,151.45. [Dkt. No. 74] Defendants challenge the merit of awarding Plaintiff any attorney fees and costs pursuant to Section 1988 or Rule 54(d).

Pursuant to Section 1988, the Court has the discretion to award reasonable attorney fees and costs to the prevailing party in an action to enforce a provision of U.S.C. §§ 1981, 1981a, 1982, 1983, 1985 and 1986. *See* 42 U.S.C. § 1988(b); *see also Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Rule 54(d)(1) creates a presumption in favor of awarding costs to the prevailing party, but it also allows the denial of such costs at the discretion of the trial court. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987); *White & White, Inc. v. American Hosp. Supply Corp.*, 786 F.2d 728, 730 (6th Cir. 1986).

## A.    The Prevailing Party

The parties initially dispute whether the Court should find that Plaintiff is the prevailing party was in this case. "A district court's determination of prevailing-party status for awards under attorney-fee-shifting statutes – such as 42 U.S.C. § 1988 – is a legal question[.]" *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 617-18 (6th Cir.

10

2:13-cv-13678-DPH-RSW   Doc # 83   Filed 03/22/17   Pg 11 of 27   Pg ID 1258

2013) (quoting *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 619 (6th Cir. 2007)).  It is undisputed that Plaintiff prevailed on only two of the nine claims he litigated: the favorable verdict against Defendant Winston on the excessive force claim and the favorable verdict against Genesee County on the failure to supervise/failure to train claim.  Defendants argue that, because: (1) the jury found no-cause of action on both of Plaintiff's claims against three of the five Defendants; and (2) Plaintiff lost on seven of the nine claims he asserted, Plaintiff was not the prevailing party in this action.  Defendants rely on three Sixth Circuit cases. *Knology, Inc. v. Insight Communications Co., L.P.*, 460 F.3d 722, 727 (6th Cir. 2006); *Singleton v. Smith*, 241 F.3d 534, 539 (6th Cir. 2001); and *White & White*, 786 F.2d at 730.  The Court is not persuaded by Defendants' argument.

Many courts have concluded, and the Court agrees, that Section 1988 and Rule 54(d) specify that "the prevailing party" in a case should be awarded attorney fees and costs, even in mixed judgment cases such as this where both parties have some claims decided in their favor.  As stated in a Federal Circuit case cited by Defendants, "[f]or purposes of costs and fees, there can be only one winner.  A court must choose one, and only one, 'prevailing party' to receive any costs award." *Shum v. Intel Corp.*, 629 F.3d 1360 (Fed. Cir. 2010) (addressing Rule 54(d)).

The Sixth Circuit recognizes that the prevailing party is not determined simply

by which party was victorious on the majority of claims. *See, e.g., Woods v. Willis*, 631 F. App'x 359, 364 (6th Cir. 2015) (addressing Section 1988) . As recognized in cases cited by both parties, the clear standard for ascertaining the prevailing party can be summarized as follows:

> To be a prevailing party, a plaintiff must have done more than bring a lawsuit that achieved the desired result of catalyzing a voluntary change in the defendant's conduct. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't. of Health & Human Res.*, 532 U.S. 598, 601, 605, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). Rather, the plaintiff must have "been awarded some relief by the court," resulting in the plaintiff receiving a "judicially sanctioned change in the legal relationship of the parties." *Id*. at 603, 605, 121 S.Ct. 1835. A plaintiff prevails within the meaning of § 1988 "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Lefemine v. Wideman*, --- U.S. ---, 133 S.Ct. 9, 11, 184 L.Ed.2d 313 (2012) (per curiam) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111-12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)); *see also Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)) ("The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties."). . . .
>
> [Defendant] contends that [plaintiff] cannot be considered a prevailing party because "defendants ... prevailed on most of the claims by far." R. at 31, Corrected First Br. 17. In determining whether a plaintiff is a prevailing party, however, courts do not look to the number of claims on which the plaintiff succeeded, the magnitude of the relief obtained, or whether the plaintiff obtained the primary relief sought; the question is simply whether the plaintiff has won on at least one claim. *Binta B.*, 710 F.3d at 620 (citing *Farrar*, 506 U.S. at 114, 113 S.Ct. 566; *McQueary v. Conway*, 614 F.3d 591, 603 (6th Cir. 2010)); see also *Tex.*

> *State Teachers Ass'n*, 489 U.S. at 790, 109 S.Ct. 1486 ("[T]he degree of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all.") This court has found, for example, that a plaintiff was a prevailing party even where twelve of his fourteen claims were dismissed. *Berger v. City of Mayfield Heights*, 265 F.3d 399, 406 (6th Cir. 2001). Here, [plaintiff] obtained relief on two out of eight claims overall, one of which was a § 1983 claim.
>
> Though the fact that [plaintiff] succeeded on only a fraction of her claims is not, in itself, enough to preclude her from recovering attorneys' fees, we must also determine whether [plaintiff] obtained merely a *de minimis* or purely "technical victory [that] may be so insignificant ... as to be insufficient to support prevailing party status." *Tex. State Teachers Ass'n*, 489 U.S. at 792, 109 S.Ct. 1486. . . .

*Woods*, 631 F. App'x at 363-64. *See also Shum*, 629 F.3d at 1367-68 (citations and internal quotations omitted) ("A party is not required . . . to prevail on all claims in order to qualify as a prevailing party under Rule 54," but "the party must have received at least some relief . . . [that] materially alter[s] the legal relationship between the parties by modifying one party's behavior in a way that 'directly benefits' the opposing party.").

In this case, the Court finds that Plaintiff did receive at least some relief on the merits. The jury found in favor of Plaintiff on one count of excessive force (against Defendant Winston) and that Genesee County was liable for failure to supervise/failure to train. The Court further finds that the relief awarded materially altered the legal relationship between the parties, especially as between Plaintiff and

13

Genesee County. Based on the relief awarded, Genesee County and Winston went from owing Plaintiff nothing prior to the verdict to owing Plaintiff $10,000.00 and $2.00, respectively. It would be beyond reason to argue that this alteration of the legal relationship between the parties was not material or that Plaintiff obtained a *de minimis* or purely "technical victory." *Id.* at 364. The Court also concludes that the relief awarded modifies (or should modify) the behavior of Genesee County and Winston, and "directly benefits" Plaintiff. For all of these reasons, the Court concludes that Plaintiff is "the" prevailing party in this case, both for purposes of Section 1988 and Rule 54(d).

### B. Bill of Costs Awarded Under Rule 54(d)

As noted above, the Clerk of the Court previously taxed Defendants costs in the amount of $3,151.45 after Plaintiff filed a Bill of Costs with the Clerk of the Court pursuant to Rule 54(d). Defendants do not challenge the amount of costs awarded to Plaintiff by the Clerk of the Court. Instead, Defendants assert that the Court should depart from the presumption in favor of awarding Plaintiff costs as the prevailing party. Relying on *Knology, Inc. v. Insight Communs. Co., L.P.*, 460 F.3d 722, 728 (6th Cir. 2006); *Singleton v. Smith*, 241 F.3d 534, 539 (6th Cir. 2001). In those cases, the Sixth Circuit "identified several factors a losing party may put forward that may be sufficient to justify a district court in overcoming the

presumption in favor of a cost award" to the prevailing party. *Singleton*, 241 F.3d at 539; *Knology*, 460 F.3d at 728. Those factors include: "the losing party's good faith, the difficulty of the case, the winning party's behavior, and the necessity of the costs." *Knology*, 460 F.3d at 728 (quoting *Singleton*, 241 F.3d at 439-40).

Defendants contend that a consideration of those four factors demonstrates that Plaintiff's request for costs should be denied. Defendants correctly note that it was a close case, as each party prevailed on multiple counts. Defendants also contend that they litigated the case in good faith and that, because they succeeded on the majority of the claims, as in *Knology*, each party should bear their own costs. Defendants do not argue that Plaintiff's behavior was inappropriate in any way. The Court is not persuaded that Plaintiff is not entitled to the costs the Clerk of the Court previously awarded. Plaintiff succeeded on two claims, including the most significant claim - the failure to supervise/failure to train claim against Genesee County.

The failure to supervise/failure to train claim is significant, not simply because of the conduct to which Plaintiff was subjected but, if such conduct continued because officers' training was not updated and refreshed, other individuals at the GCJ could be subjected to the same or similar conduct. If the Court does not award costs to a Plaintiff in a case such as this, prisoners and Plaintiff's attorneys likely would be dissuaded from bringing similar actions because it would cost them more to litigate

15

than they could recover.  The Court concludes that granting Plaintiff's Bill of Costs was necessary.

The Court DENIES Defendants' Motion to Review the Clerk's Taxed Costs Pursuant to Rule 54(d)(1) and Deny Costs to Plaintiff.  The Clerk of the Court's award on Plaintiff's Bill of Costs shall not be disturbed, amended, or modified.

### C.     Attorney Fees Pursuant to Section 1988

In his Motion for Order Awarding Attorney Fees, Costs and Interest, Plaintiff seeks $93,375.00 in total attorney fees, $6,718.75 for legal assistant/paralegal fees, $8,045.94 for "costs associated with the file," and $1,552.32 in interest.

#### 1.     Attorney Fees; Legal Assistant/Paralegal Fees

The Sixth Circuit requires that the district court "make clear and adequate findings of fact" in its decision regarding the reasonableness of attorney fees. *Northcross v. Board of Education of the Memphis City Schools*, 611 F.2d 624, 636 (6th Cir. 1979).  It is a well established rule that the lodestar method is the proper means to determine the amount of reasonable attorney fees.  *Hensley v. Eckerhart*, 461 U.S. 424 (1983); *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000); *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). The trial judge may then, within limits, adjust the "lodestar" to reflect relevant considerations peculiar to the subject litigation. *Adcock-Ladd*, 227 F.3d at 349; *Reed*, 179 F.3d at 471-72.

16

The factors which the Court may consider, either in determining the basic lodestar fee and any adjustments to be made to that fee, include the twelve factors set forth in *Adcock-Ladd*. These factors are: (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Adcock-Ladd*, 227 F.3d at 349.

As the court stated in *Adcock-Ladd*:

[A] highly important Johnson factor is the result achieved. 461 U.S. at 435-36. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Id. at 435. Generally, a "strong presumption" favors the prevailing lawyer's entitlement to his lodestar fee. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986) (citing *Blum* [*v. Stenson*], 465 U.S. [886] at 897 [(1984)]. Accordingly, "modifications [to the lodestar] are proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts." *Delaware Valley Citizens' Council*, 478 U.S. at 565 (citing *Blum*, 465 U.S. at 898-901). *See also Van Gerwen v. Guarantee Mutual Life Co.*, 214 F.3d 1041 (9th Cir. 2000).

17

*Adcock-Ladd*, 227 F.3d at 349-350.

The Supreme Court has determined that "reasonable fees" under § 1988 are to be calculated according to the prevailing market rates in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The starting point is to determine the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433. There is a strong presumption that this lodestar figure represents a reasonable fee. *Id.* In determining the reasonableness of the fees, the Court can look to the fair market value of the services provided which reflects training, background, experience and skill of the individual attorney. These facts along with the hourly rate must be sworn to in an affidavit. *Northcross v. Bd. of Educ. of Memphis*, 611 F.2d 624, 638 (6th Cir. 1979). The hours claimed do not have to be automatically accepted by the court. *Id.* at 636. The hours must be based on affidavits of counsel, supported by documents, including an accurate summary of contemporaneous time records with dates, number of hours expended, by whom, and a specific explanation of the action taken. *Id.* Hours can be cut for padding, frivolous time or duplicative work. *Id.*

Defendants assert that, at best, Plaintiff has "achieved only partial or limited success," such that an award of the number of hours claimed multiplied by a reasonable hourly rate may result in an excessive amount. Citing *Hensley*, 461 U.S.

18

at 436.   Defendants assert that Plaintiff failed on approximately 80% of his claims submitted to the jury and that Plaintiff's attorney fee award should be adjusted accordingly to reflect that success rate.   Defendants also contend that Plaintiff's claimed hourly rates for his attorneys (Shawn C. Cabot - $300/hour, Amy J. Drouin - $300/hour, and Adam Vanderpols - $200/hour) are excessive.

Plaintiff does not offer much analysis or support for the attorney fees he seeks. The following paragraph constitutes the entirety of Plaintiff's argument in support of an attorney fees award pursuant to Section 1988:

> Review of the twelve *Johnson* factors show that they clearly support Plaintiff's request for an award of attorneys' fees. The time and labor which this case required of Plaintiff's counsel cannot be disputed by Defendants. Because of the constitutional issues which this case involved, and the numerous actions by defendants and their counsel, this case required a certain level of skill to perform the legal services properly, and to yield a positive outcome. The fees which Plaintiff's counsel requests are customary and reasonable for this area of the law and the market. Plaintiff's counsel has the requisite experience, reputation and ability to justify the fees which are being sought. This case has "undesirable" elements, in that the plaintiff was incarcerated at the time of the incident complained of occurred.

[Dkt. No. 73, PgID 1062-63]

The Court agrees that awarding Plaintiff either the number of hours or the reasonable hourly rate he claimed would be excessive in this case, for several reasons: (a) Plaintiff succeeded on only two of his nine claims; (b) a verdict of no liability was

returned with respect to three of the five Defendants; and (c) Plaintiff's limited analysis of the *Johnson* factors undermines his request for over $100,000 in attorney fees and costs.

As to the hourly rates claimed by Plaintiff, the Court notes that, aside from a self-serving conclusory statement in Mr. Cabot's affidavit that the fees charged for himself, the other attorneys, and the legal assistants/paralegals are reasonable [Dkt. No. 73-4, PgID 1077, ¶ 14], Plaintiff offers no evidence that those billing rates are reasonable. Defendants attached to their response brief the 2014 State Bar of Michigan "Economics of Law Practice" Attorney Income and Billing Rate Summary Report. [Dkt. No. 77, Ex. A, Table 7] As Defendants argue, (1) the median billing rate for private practitioners in the Civil Rights practice area is $250/hour (which also is the median billing rate for attorneys with Mr. Cabot's years of experience) [Dkt. No. 77, Ex. A, Table 4]; (2) the 25th percentile for an attorney with less than 10 years experience (like Ms. Derouin) is $180/hour; and (3) the 25th percentile for an attorney with less than one full year in practice (like Mr. Vanderpols) was $138/hour.

The Court concludes that the rates for Mr. Cabot, Ms. Derouin, and Mr. Vanderpols proposed by Defendants are appropriate. As set forth above, Plaintiff's argument in his motion and brief was limited and not evidence based. And, even though Defendants thoroughly challenged Plaintiff's request for attorney fees,

20

Plaintiff did not reply to Defendants' argument. The Court finds that Plaintiff has presented no evidence why Mr. Cabot should be compensated more than the median rate of someone with his experience or in the field of Civil Rights. Plaintiff has offered no evidence related to Mr. Vanderpols, whose only connection to the case was coming to court to wait for the jury verdict. And, Plaintiff has not demonstrated why Ms. Derouin should be compensated at a rate higher than $180/hour.

Defendants do not challenge the number of hours worked by Mr. Cabot, Ms. Derouin, and Mr. Vanderpols. Accordingly, the Court concludes that, if Plaintiff prevailed on all of his claims, Plaintiff would be entitled to aggregate attorney fees of $66,433.50 (the "lodestar amount") associated with legal representation of Plaintiff. The Court bases its computation of the lodestar amount on the following: (a) Mr. Cabot - $64,125 ($250/hour for 256.50 hours); (b) Ms. Derouin - $1,170 ($180/hour for 6.5 hours); and (c) Mr. Vanderpols - $1,138.50 ($138/hour for 8.25 hours).

Because Plaintiff only prevailed on two of his nine claims and against two of the five Defendants, the Court believes that an award of the full lodestar amount would not be appropriate in this case. Defendants argue that, in order to reflect that Plaintiff prevailed on only two of nine claims, Plaintiff should receive only 20% of the lodestar amount determined by the Court. Plaintiff did not respond to

21

Defendant's proposal of awarding only 20% of the lodestar amount, but the Court finds that amount to be unreasonably low. First, Plaintiff prevailed against two of the five parties (40%), and one of the parties he prevailed against was Genesee County. Second, in presiding over this case, it was evident to the Court that the main thrust of Plaintiff's argument was that deficiencies in training by Genesee County, particularly regarding the use of excessive force, were the root cause of the injuries inflicted upon Plaintiff.

Third, the Court notes that the import and impact of Plaintiff's claim against Genesee County was significantly greater than that of any of the other claims, individually or in the aggregate. The failure to train by Genesee County negatively affects the knowledge and skills of all the personnel at GCJ and that lack of training, particularly as it relates to excessive force, affects the conditions in the GCJ, to which all GCJ prisoners are subjected. On the other hand, any wrongful actions of an individual officer (or several individual officers) are likely to affect a far more limited number of GCJ prisoners.

For the reasons stated, the Court concludes that awarding 62.5% of the lodestar amount would be reasonable in this case. The Court's award of 62.5% of the lodestar amount is based on treating Plaintiff's claim against Genesee County as 50% of his case (although Plaintiff's focus on Genesee County may have been greater than that)

22

and each of Plaintiff's eight claims against the individual officers (of which he prevailed on one) as 12.5% of his case. Accordingly, the Court awards Plaintiff $41,520.94 for attorney fees for Mr. Cabot, Ms. Derouin, and Mr. Vanderpols pursuant to Section 1988.

Plaintiff's request for legal assistant/paralegal fees is just that–a request. Plaintiff merely states that he "seeks $6,718.75 with respect to legal assistant/paralegal fees." [Dkt. No. 73, PgID 1056 at ¶ 11] Plaintiff attaches to his motion a chart regarding time spent working on the case by 15 or 16 different persons (the Court cannot ascertain whether the initials RRW and RW reflect one person or two persons), each identified only by his or her initials. [Dkt. No. 73, Ex. F] Plaintiff does not provide names or positions with respect to any of those persons, and Plaintiff asks that the Court award Plaintiff $125/hour for 53.75 hours purportedly worked by such persons.

Defendants suggest that the Court should exercise its discretion to deny legal assistant/paralegal fees because they are not included in the statute and are not taxable pursuant to the Bill of Costs handbook. The Court declines that request. Defendants contend that the absence of identification of timekeepers, what their positions are, and whether the work they performed on this case was necessary, reasonable, and non-clerical (as many of the entries suggest). Finally, Defendants argue that any fee

23

amount attributable to legal assistants/paralegals should be reduced to reflect that Plaintiff succeeded on only two of nine claims.

The Court concludes that, based on the motion before the Court, Plaintiff is not entitled to recover any amounts for legal assistant/paralegal fees. It is Plaintiff's burden of proof to demonstrate the reasonableness of the fees he is requesting. *See, e.g., Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999) (citing *Hensley*, 461 U.S. at 433). Plaintiff has not adequately: (a) identified the persons who performed work on this case as legal assistants/paralegals; (b) identified each person's position; and (c) demonstrated that the work performed was non-clerical. In a case where 15 or 16 persons allegedly working as legal assistants/paralegals performed some work on the case, the Court finds that Plaintiff has not satisfied his burden to demonstrate his entitlement to fees for such persons. Accordingly, the Court denies without prejudice Plaintiff's fee request as it pertains to work allegedly performed by legal assistants/paralegals.

2.   *Costs*

As with Plaintiff's request for legal assistant/paralegal fees, his request for costs associated with the file is barebones. Plaintiff states only that he "seeks $8,045.94 with respect to costs associated with the file." [Dkt. No. 73, PgID 1056 at ¶ 12] Plaintiff states, without elaborating further, that:

>Under 42 U.S.C. § 1988, Fed. R. Civ. P. 54(d)(1) and E.D. Local Rule
>54.1, out-of-pocket costs incurred in sustaining the litigation (like
>deposition fees, travel costs, telephone charges, copying expenses, etc.)
>should be reimbursed. *Northcross v. Bd. of Educ. of Memphis*, 611 F.2d
>624 (6th Cir. 1979); *see also Pinkham v. Commex, Inc.*, 84 F.3d 292,
>294 (8th Cir. 1996); *Neufield v. Searle Laboratories*, 884 F.2d 335, 342
>(8th Cir. 1989); *Wheeler v. Durham City Bd. Of Educ.*, 585 F.2d 618,
>623 (4th Cir. 1978).

[Dkt. No. 73, PgID 1063]

Plaintiff attaches to his motion a document listing a variety of charges. Defendants argue that Plaintiff: (1) did not set forth how any of the claimed charges are reasonable and necessary; (2) frequently failed to identify what the charges are attributable to; and (3) listed multiple items that are not taxable as "other costs" pursuant to the Bill of Costs Handbook of the Eastern District of Michigan (specifically, computerized legal research, postage fees, long distance phone calls and fax charges, and office overhead).

The Court concludes that Plaintiff has not satisfied his burden of establishing that he is entitled to any of the costs he claimed. Many of the listed charges are for unexplained items, including multiple entries for "Print Charge," "Scan and Shred Charge," "Copy Charge," and postage charges. In reviewing Plaintiff's claimed charges, the Court observes that Plaintiff seeks an amount of $2,000.00 for "Lexis research for case up to time of trial," without identifying when the research was

conducted, nor does he indicate what issue or motions or filings the research addressed. Accordingly, the Court denies without prejudice Plaintiff's request for "costs associated with the file."[1]

### 3.   *Interest*

Plaintiff requests that the Court award him $1,552.32 in interest. Plaintiff does not explain how he came up with that figure, nor does he offer any authority to support the award of any interest in this matter. The Court denies without prejudice request for $1,552.32 in interest.

### 4.   *Conclusion*

Plaintiff's Motion for Order Awarding Attorney Fees, Costs and Interest is granted in part and denied in part.

## IV.   CONCLUSION

For the reasons stated above, IT IS ORDERED that Defendants' Motion for Judgement as a Matter of Law (Doc. No. 71) is **DENIED**.

IT IS FURTHER ORDERED that Plaintiff's Motion for Order Awarding Attorney Fees, Costs and Interest (Doc. No. 73) is **GRANTED IN PART** and **DENIED IN PART**.

---

[1]The Court notes that, even if it were to award Plaintiff fees for legal assistants/paralegals and/or costs, the amounts awarded for such fees and costs would be reduced in the same manner and for the same reasons as Plaintiff's attorney fees' award was reduced.

26

IT IS FURTHER ORDERED that Defendants shall pay Plaintiff $41,520.94 for attorney fees.

IT IS FURTHER ORDERED that Defendants' Motion to Review the Clerk's Taxed Costs Pursuant to Rule 54(d)(1) (Doc. No. 76) is **DENIED**.


S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: March 22, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 22, 2017, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager